(Hamilton County Probate Court.)

IN RE ASSIGNMENT OF ROBERT L. ENGLE.

*Assignment—Secret agreement to give a preference—Validity of debts and priority of lien— "Operative" defined.*

1. An agreement by a failing debtor to give a preference to secure a *bona fide* indebtedness, in the event of an assignment, does not invalidate such preference subsequently given, in performance of such secret agreement.
2. Construction of section 6366, Rev. Stat., as to who is an operative.
3. The right to take a lien is not assignable.
4. Sections 3206a and 6355, Rev. Stat., are not antagonistic.

(Decided November, 1894.)

FERRIS, J.

The court has listened to the testimony of the witnesses and the exhaustive arguments of counsel on the questions of law and fact for the purpose of determining the validity of the claims, as well as priority of the liens of the various claimants to the funds now in the hands of the court for distribution. The interesting and novel propositions that have been presented by the statement of facts makes it desirable to note the situation that is presented by the testimony. The court finds, from the testimony, the following statement of facts:

That Robert L. Engle was a contractor engaged in the business of making streets, grading, and in work connected with the laying out of subdivisions; that, as such contractor, he entered into an arrangement in writing with Mr. Groesbeck by which certain changes were to be made in the topography of his lands lying in this county, according to plats and profiles on file in this cause. In order to secure the faithful performance of the contract, which is in evidence, Mr. Engle sought and obtained, for a consideration, the Fidelity & Deposit Company of Maryland to guarantee the same, and they in turn, to secure themselves, required Mr. Engle to enter into a contract in words and figures following, to-wit:

" Whereas, the Fidelity & Deposit Company of Maryland, for and in consideration of the covenants herein made by Robert L. Engle, as well as other considerations, has agreed to become surety upon the bond of said Robert L. Engle for the faithful performance of his agreement with William S. Groesbeck, of Hamilton county, Ohio, dated the ——— day of November, 1893, for the grading and improving of certain property mentioned in said agreement in accordance with the drawings and specifications referred to therein.

" And whereas, in the application of said Robert L. Engle to said company to become his surety, said Robert L. Engle represents himself as the owner of certain steam shovels, etc., to be used in the execution of the above named contract.

" Now, therefore, in consideration of the premises and the sum of one dollar, said Robert L. Engle does hereby covenant and agree with said Fidelity & Deposit Company of Maryland, that in the event of failure of said Robert L. Engle to complete said agreement, he will permit said company, or any person or persons designated by it, to use said steam shovels, cars, engines and all other fixtures, apparatus and property used or to be used by said Robert L. Engle in the execution of said agreement or contract, in order to enable said company to complete, or have completed, said agreement; that said company shall have a lien upon said property for such purpose, which said lien shall attach immediately upon the execution of said instrument, and shall continue until said agreement or contract

with said William S. Groesbeck is completed, and all liability of said company as surety aforesaid shall cease.

"And the said Robert L. Engle further covenants and agrees not to execute any paper, nor to do anything with reference to said property which could possibly create a lien, either in law or equity, upon the said property.

"Witness the hand and seal of said Robert L. Engle this eighteenth day of November, A. D. 1893.

"[SEAL]       ROBERT L. ENGLE.

"*Witness:*

"THOMAS M. DOBBIN."

*State of Maryland,* } *ss:*
  *Baltimore City.*

"I hereby certify that on this eighteenth day of November, A. D. 1893, before me, the subscriber, a notary public of the state of Maryland, in and for Baltimore City, personally appeared Robert L. Engle, the person who executed the above instrument of writing, and acknowledged the same to be his act and deed.

"In testimony whereof, I have hereunto set my hand and affixed my official seal at the city of Baltimore, the day and year first above written.

[SEAL]       "THOMAS M. DOBBIN,
"*Notary Public.*"

Thereupon Mr. Engle began the performance of the work, and continued in the same until the ninth day of July, 1894, when, finding himself unable to meet pressing demands, he gave securities to creditors, viz., a chattel mortgage, to secure to one L. A. Nichols the sum of $2,000, a bill of sale to the Fidelity & Deposit Company, and on the 14th day of July, 1894, filed a deed of assignment in this court.

Nichols, the owner of the mortgage claim here contested, was a civil engineer, acquainted with this character of the work and understanding the value of services necessary to be done in and about such employment. After an examination, he declined a proffered partnership, but agreed to make a loan to Mr. Engle upon terms and conditions that were satisfactory to himself. Out of abundance of caution, and after many conferences relating to security, for reasons that were satisfactory to him and agreeable to Engle, it was provided that, in the event of financial disaster, he should be secured by a mortgage upon the plant; by which it was intended to mean, that if Engle was compelled to abandon the work and take the benefit of an assignment, Nichols was to have a mortgage upon the assets of Engle, used in the completion of the contract.

It is claimed by counsel for the general creditors that a mortgage made under these circumstances, namely, in pursuance of a promise for security, is fraudulent and void; that the agreement thus made is in fraud of the rights of creditors, furnishing as it does delusive credit to a party not entitled to the same by reason of a secret promise to secure one creditor to the exclusion of others.

The agreement that was made with the Fidelity Company, the testimony shows, was known to Nichols in substance. In other words, he loaned the money to Engle with knowlege of the existence of some agreement that Engle had entered into with the said Fidelity Company. This the testimony fully discloses, and therefore, it is claimed, that as against the rights of the Fidelity Company, he took his mortgage with full notice.

Having entered into the agreement heretofore recited with the Fidel-

ity Company, the instrument of security remained in their possession until the 14th day of July, when the same having been verified, was made a matter of record. It is contended that the instrument was thereupon entitled to the full force and effect of a chattel mortgage given in good faith to them, as creditors of Engle, to secure them against any loss which they might sustain by reason of the suretyship for Engle.

As against this position, it is contended that no indebtedness ever existed and has not at the present time existence, and therefore is not the subject of a chattel mortgage; that whatever damage may have been sustained, is the result of their own business methods, and not the fault of another; that the instrument does not rise to the dignity of a mortgage, nor is it an instrument of pledge; that possession of the goods was never at any time in the Deposit Company, guarantors, and that the only right which they ever at any time possessed under the instrument was waived by their own action; that the instrument itself conveys no title, but simply gave to the Deposit Company the right to the use of the materials covered by the instrument, for the prosecution of the work contemplated by the contract, in the event of Engle's failure to perform all the stipulated conditions with Mr. Groesbeck.

As to the claims of Nichols and Parker, who assert that they were within the meaning of 3206a, of the Revised Statutes, as well as the provisions found in section 6355, it is said that they are not, within the meaning of those provisions, "operatives;" that the labor which they rendered was not of the charater or kind that is intended by the law to be protected by these sections. The testimony shows that they acted as superintendents, (Nichols the successor of Parker), of the work undertaken by Engle in his contract with Mr. Groesbeck; that their work was directory, and not manual, and that therefore they are not entitled to assert a priority as against general creditors.

It also appears from the testimony, that one Fred. Drucker, who was a sub-contractor under Engle, had, for a consideration, furnished a number of teams employed by Engle upon the work, and that he, as occasion required, visited the place where the work was being done, and rendered such advisory services as the situation demanded. It is claimed as against him that he is not an operative, and is not entitled to a preference, either under sec. 6355, Revised Statutes, or under sec. 3206a.

Shortly prior to the assignment, at the request of the Maryland Fidelity & Deposit Co., there were paid by Wm. S. Groesbeck certain labor claims to avoid litigation. These claims were subsequently purchased by the Fidelity & Deposit Company, and are now asserted as liens under sec. 6355. The assignability of the claims thus purchased is questioned, it being contended, as against their right to be paid out of the fund now in the hands of the court, as prior claims, that as claims they are not assignable, never having been perfected into liens, while it is not contended that had they become liens, from and after such time they would become negotiable. These are practically the differences that are to be determined in this action.

Considering now the claim of L. A. Nichols for $2,000, evidenced by a note dated Cincinnati, May 11, 1894, payable on demand, with interest at 7 per cent., on which there is an endorsement, "Interest paid to July 9, 1894." To secure payment of this note, Robert L. Engle did, on the ninth day of July, 1894, make, execute and deliver his certain chattel mortgage covering certain chattels set out therein, being a large portion of the assets used by Robert L. Engle in the prosecution of his contract. The mortgage was properly executed and filed with the proper officer, and the court is now asked to establish the same as a valid preference against the estate of Robert L. Engle, assigned.

This claim is resisted, and the court is asked to find it no valid preference, for the reason that it appears from the testimony that Engel was in embarrassed circumstances at the time of the making of the loan; that he had, prior to that time, entered into the agreement with the Fidelity & Deposit Company; that Nichols well knew of the arrangement that then existed between Engle and his sureties; that he was also familiar, as appears by the correspondence, with the finacail straits of Engle, and the agreement made at the time of the loan, therefore, was fraudulent as against creditors; that the secret agreement to execute the mortgage in the event of the failure or inability to complete the contract, gave to Engle a false position, and enabled him to obtain a credit to which he was not entitled, and that the whole contract amounted to a fraud, which renders the chattel mortgage, subsequently executed in pursuance of the secret arrangement, null and void.

Counsel, to sustain that proposition, has called the attention of the court to a number of well considered authorities bearing upon their view of the question.

An examination of the leading case referred to by counsel, 27 Southwestern, page 341, Missouri Supreme Court Reports of June, 1894, does not in the opinion of the court, meet squarely the case at bar. Nichols loaned the money to Engle for the prosecution of this work, and received from him, on May 11, a promise to secure him on the happening of certain events. From that date until the execution of the mortgage on July 9, Engle saw no necessity for the performance of that agreement (not in writing). Nichols had nothing which he could have enforced during that period, and it will not be claimed that he had a lien. The loan of Nichols did not increase Engle's indebtedness. It simply changed the form, not the substance. Nichols became substituted, and other debtors were satisfied to the extent of Nichols' loan. The money paid by Nichols assisted Engle, and it was Engle's duty, both in morals and in law, to have paid this indebtedness thus created back to Nichols.

Whatever may have been the moral obligation under the circumstances, it was his legal duty to have paid the same, and he had the right both to pay and secure the indebtedness (49 Ohio St. 548, *Cross* v. *Carstens*), provided that in so doing he did not violate any legal obligation theretofore existing by the instrument of November 18, 1893; and, in deciding this question, necessarily the court must pass upon the conflicting claim to priority of the Deposit Company, who assert a lien by virtue of the arrangement as it appears in the article of November 18.

For, if it appear that the money was actually paid by Nichols to Engle, and that it also appears in law that the instrument of November 18 did not create a lien in favor of the Fidelity & Deposit Company, even though it be admitted that the instrument was intended by the parties thus to do, Nichols' rights will be determined regardless of that instrument.

If, on the other hand, it appears from the testimony, as I am of opinion that the testimony clearly shows, that Nichols knew full well of the embarrassed condition of Engle's finances at the time of the making of the loan, and subsequently of the giving of security, he took his security with notice of the fact that there were numerous claimants and that they would be defeated in the collection of their accounts by reason of the execution of the promise that was made to him for security by Engle, would this fact invalidate the security now before the court?

Considering now the claim of the Fidelity & Deposit Company to a preference, the court has reached the conclusion from the testimony, that it is not a chattel mortgage; was not intended by the parties to be such, and does not comply with the legal conditions necessary to create a lien, The instrument on its face shows that in the event of the failure of Engle

to complete the agreement with Groesbeck, he would "permit the company, or any person or persons designated by it, to use said steam shovels, cars, engines, etc., in the execution of said agreement or contract, in order to enable said company to complete or have completed said agreement." And then follows the expression, "that said company shall have a lien upon said property for such purpose, which said lien shall attach immediately upon the execution of this instrument, and shall continue until said agreement or contract with said William S. Groesbeck is completed." In other words, the language provides for a lien upon *the use* of this plant as determined by this agreement. Does this comply with the conditions of our statute providing for the creation of a lien by way of mortgage?

The title of this property never was at any time in the Fidelity & Deposit Company. Possession, likewise, was never in them, as shown by the testimony. Engle never parted with his possession, and the instrument in question clearly shows that he never intended to. The expression "lien" is used, but that is a legal word, the conditions necessary to create which being well defined by the decisions.

A lien is either a statutory or an equitable one, and inasmuch as a statutory lien is not shown anywhere in the testimony, an equitable lien is not relied upon. The contract or instrument clearly refers to "a lien for a use," a thing unknown to our law. A party claiming a lien under our laws must have possession, or right of possession of the chattels against which the lien is asserted.

In the cases to which counsel have called the court's attention, the mortgage was given and in the possession of the mortgagee, while the property remained in the mortgagor. Nothing of that sort appears in this case. I think, therefore, that the reasons announced in the decision of February 24, 1890, in the *Simpson* v. *Gault* case, make a proper distinction, and are based upon legal and equitable principles, and that the principles laid down therein are applicable to the case at bar.

I believe, from the testimony, that it will not be denied that at the time of the execution and delivery of the agreement of November 18, a very large proportion of the things used by Engle at that time were not included in the subsequent bill of sale, or, to put it better, between the giving of the two he acquired the major portion of the articles included in the bill of sale filed July 11, 1894, and executed subsequently and subject to the mortgage of Nichols.

Now, if possession is necessary, and delivery is not to be dispensed with, is the agreement an article of pledge? Here, likewise, I am of opinion that the Fidelity & Deposit Company never at any time were the pledgees of this property. Possession, the gist of this right, was never taken by the company. Delivery here also is absolutely essential to a bailment.

I will not discuss the other propositions that are named. I have reached the conclusion satifactory to me from the testimony, that the article in writing of November 18, did not create in law or equity a lien upon the assets of Engle, which are included in Nichols' mortgage.

I pass over here a great many of the propositions advanced by counsel, for the reason that, having determined that there was no lien under the statute for reasons above stated, it is not necessary to discuss the other arguments presented by counsel.

If the article of November 18 did not create a lien, the next proposition to which I address myself is the situation presented by the testimony at the time Nichols took his security, and whether or not under the circumstances, it is entitled to a priority. The debt of Nichols is not disputed. It was a *bona fide* indebtedness. He loaned the money to Engle, and I am of opinion, from the testimony, that it was spent in and about the prosecution of the work and the payment of the claims connected with

Engle's contract; that it did not increase the indebtedness, but worked a substitution.

I now consider the question of priority of Nichols' mortgage. I think I have fairly stated the contention of counsel, that this agreement to secure Nichols in the event of Engle's failure was a fraudulent scheme, and I have examined with care the authorities cited by counsel to sustain that proposition. I now desire to call attention to the facts, to see whether the principles relied upon to defeat the preference are applicable to this case—granting that our courts would affirm the correctness of the same did the facts warrant the conclusion upon which the decisions are predicated, finding under what circumstances mortgages are invalid.

It will not be contended that whatever was said or done by Engle from May 11 to July 9, when the security was given, created a lien in Nichols, or control over the assets of Engle. The loan could not have been made by Nichols with the intention of injuring the creditors; on the contrary, the money went to the payment of creditors—practically all of it. No mortgage was given, and until July 9, Nichols was a creditor unsecured.

The cases to which the court's attention has been specially called, as bearing upon the validity of the Nichols mortgage, set forth the giving of a mortgage by the debtor to the creditor, the debtor receiving the same knowing the creditor to be in failing circumstances, withholding it from record until shortly before assignment, thus enabling the debtor to continue business without impairing his credit, and such mortgage, upon proof, has been held void as against creditors.

It is agreed that no mortgage was in fact ever given until July 9; that it was not when given withheld from record. Now, then, if the facts in the case do not bring it within the line referred to, making this part and parcel of a fraudulent scheme, then it would follow that the preference is good, and, as against this fund.

A careful reading of the opinion delivered in case No. 74,905, Hamilton Common Pleas, December 24, 1890, bears directly upon this question. The assignor in that case had agreed with the creditor, at the time the debt was incurred, that he should be secured. The chattel mortgage was given for that purpose but a short time before the assignment, and the court held that the corporation was bound to see the completion of the contract, and that in discharging that obligation, the corporation had neither impaired nor disturbed any rights pertaining to general creditors.

The case of *Stewart* v. *Hopkins*, a case that went up from the Superior Court of Cincinnati, furnishes at length and conclusively the reasoning of our highest tribunal on the question of fraudulent mortgages. Covering over forty pages is a decision full of suggestions and reasons that have special application to the case at bar, and from it I conclude that our Supreme Court is not committed to the proposition advanced by counsel, concluding that this mortgage of Nichols' is a part of a fraudulent scheme, and therefore void. I am rather of opinion that the line of our authorities tends strongly toward the conclusion reached by the U. S. Supreme Court in the case of *Sawyer* v. *Turpin*, 91 U. S., page 114 *et seq.*

No contention is made as to the one transaction theory, and we have every reason to believe from a study of the *Simpon-Gault case*, which has been before our Supreme Court on a number of occasions, that the one transaction theory will not be followed, and I therefore have given little or no attention to this phase of the discussion. But, having reached the conclusion that Nichols' debt was *bona fide*, that the mortgage was given in good faith to secure an existing indebtedness, and was not fraudulent as to creditors, nor is it part and parcel of a scheme either to defraud them or to injure their rights, and not finding from the testimony any irregularity which in my judgment would invalidate the same, I have come to the conclusion that this mortgage should be declared a valid preference.

Having disposed of the Fidelity & Deposit Co. and the Nichols mortgage, it remains simply to pass upon the claim of Nichols and Parker and the other so-called claims of laborers and operatives.

Nichols and Parker were employed by Engle as superintendents, whose duty it was to oversee the work and manage the same in all its details on behalf of Engle, the assignor, and it is in testimony that not only did they supervise the work, but, when necessary, lent a helping hand. Nichols was a practical operative, understood the work from its inception, could make estimates, did so, and was thoroughly familiar with the operation of the work in every stage. His claim is, that under the provisions of section 6355, he is of the class " who shall have performed any labor as an operative in the service of the assignor," and is therefore " entitled to receive out of the trust funds, before the payment of the other creditors, the full amount of the wages due to such person for such labor performed within twelve months preceding the assignment, not exceeding $300."

Our courts, after many trials and tribulations, I think have removed reasonable doubts as to the meaning of this expression " operative." 6th Circuit Court Reports, 243, and cases cited therein, satisfactorily show that such services thus performed are, within the meaning of the statute, the services of an operative. See also, 25th Weekly Law Bulletin, 203.

But it is urged that Nichols' claim is fraudulent, for the reason that it is shown to be for a different amount than that which is actually due. And it is further urged that whatever claim he may have had has been waived. I think neither of these grounds is tenable. Nichols had the right to forego, if he saw fit, the presentation and the collection of any or all of his debt. He could have reduced it to any amount he saw fit, provided only that there remained due to him the amount set forth in his claim against the insolvent debtor. This, the court finds, was due to him, under his contract with Engle, at the rate of $150 per month. Nor do I find, from the testimony, facts which, in law, amount to a waiver of his right to assert his claim under the provisions heretofore cited.

The Fidelity & Deposit Company, the owners of the claims that were paid for by Wm. S. Groesbeck, at their instance, now assert their right to be paid out of the trust funds. Had these laborers remained unpaid until the present time, and were they here now before the court asserting their claims to be paid as operatives, there could be no question as to either the validity of the debt or their right to a preference. Their claims were purchased and assigned before steps were taken to perfect their liens. They had at all times, after the rendition of the services, a right to a lien, and this is not assignable. Had they perfected their liens, the negotiability of the same would be clearly within the scope of their rights. This is not the case as presented to the court. The claims are not assignable, the liens are. This one is a personal right which the statute gives to the laborer for his protection, and, when asserted, becomes a fixed and determined lien. That is the laborer's right, and the statute is made for his, and not for the protection of another. Having voluntarily paid these claims it would seem that, in equity, the doctrine of subrogation would apply, but I do not find from the authorities that I would have the right to substitute for the claims of the laborers the Fidelity & Deposit Company.

There remains but one further claim, that of Frederick Drucker, who sets up his right to be paid out of the funds now in the hands of the court under the same provisions to which the court has heretofore referred, and as though there were doubt as to whether or not his claim filed under the provisions of section 6355, or under section 3206a, counsel has pursued the safe remedy of presenting the claim to the assignee under the one section, and of filing his claim with the county recorder under 3206a. Dis-

cussion has been had as to the hostility of these two sections; but the court finds that under neither has he any right to assert his claim as a laborer or operative, so that it is unnecessary to reconcile the one with the other. He is neither a laborer, nor an operative. He simply has a claim for money due and owing to him for services rendered by his teams under the contract, but has no right to a lien. The authorities quoted in a case in 58 N. Y. are, in my judgment, conclusive upon this point, as well as the reasoning that the court has endeavored to set forth in this opinion, that a sub-contractor for himself can not acquire a lien under the provisions of section 6356.

*Barton & Dorger,* for Nichols and Parker.

*Drausin Wulsin, Jones & James* and *James B. Matson,* for the Fidelity Deposit & Trust Company and others opposing.